Swanzey *v.* Moore.

---

JAMES SWANZEY, Appellant, *v.* JOHN MOORE, Appellee.

### APPEAL FROM BUREAU.

Executory contracts are avoided by the statute of frauds; executed contracts are not.

If a laborer contracts verbally, to work an entire year, he is entitled to the wages agreed upon; and to the same proportionate compensation, for any period of time he labors, less than a year.

A parol contract, which is required by the statute to be in writing, is as binding as any, when performed, or while being performed.

If a party agrees to labor for a year for a certain sum, he must labor for that time to be entitled to any compensation. He is not bound to labor longer than he pleases, but if he abandons the contract voluntarily, he need not be paid for the time he does labor.

If a party agrees to labor for a fixed period, and quits before that period has elapsed, without any sufficient cause, or for any cause he has provoked, he cannot recover for the time he has labored.

THIS suit was brought by appellee against appellant for work and labor.

Appellee proved that he had worked for the appellant from the 5th March, 1856, until the 25th August, 1856, as a common farm laborer, and that his services were worth from $17 to $18 per month.

The appellant then introduced evidence, tending to prove, that said work was done under a special contract, made between the parties, about one week before said 5th March, to the effect that the appellee should work for the appellant for one year from said 5th March, for $200. The appellee introduced evidence tending to prove, that said service was performed under a special contract between said parties, that the said appellee should work for the appellant one year, if the said parties could agree. Appellant further introduced evidence tending to show, that the appellee professed to be a good stacker of grain, and that while in appellant's employ as aforesaid, that the appellee stacked a quantity of wheat for appellant imperfectly, and that in consequence thereof a portion of said wheat became wet and spoiled. The appellant proposed to ask a witness, how much wheat appellant had lost by such bad stacking, and the value of the wheat so lost, but the court refused to permit the witness to

answer, and the appellant excepted. The appellant further introduced testimony tending to show that the appellee left appellant's service without good cause, and that there had been no disagreement between said parties before then, but that on the day appellee quit work, that appellant's son, who partially took charge of appellant's farming business in his absence, expressed dissatisfaction that the appellee and another hired hand of appellant, had not hauled more than two loads of hay; that the appellee then left appellant's service, and worked no more for the appellant. The court, at the instance of appellee, instructed the jury that the appellee was entitled to recover, notwithstanding that the said services had been rendered under the special contract to work for one year from the 1st March, 1856, if the contract was made before that time; and rejected instructions that if the appellee had voluntarily rendered said services under such contract, that he could not in this suit insist that the contract was void, to which the appellant excepted.

The appellant asked the court to instruct the jury, that if the contract was, that the appellee should work for the appellant one year, if they could agree, that then one single dispute with, or reproof from Swanzey's boy to appellee, without appellant's knowledge or participation, would not authorize the appellee to leave the appellant's service before the expiration of his, appellee's, term of service; but the court declined to give the instruction, and the appellant excepted. The appellant asked as a qualification to appellee's instruction, that the appellee could not manufacture a pretense to disagree with Swanzey or his agents, but that he must have had a good reason to disagree with, and become dissatisfied with appellant or his agents, in order to entitle the appellee to quit the appellant's service before the expiration of his time; but the court declined to give such qualification, and the appellant excepted.

The jury found for the appellee. The appellant moved for a new trial, which the court overruled, and the appellant excepted. The cause was tried before BALLOU, Judge, who rendered judgment upon the verdict against Swanzey for ninety dollars.

The errors assigned are:

1st. That the court erred in refusing to permit the witness to answer as to the loss of the wheat caused by appellee's bad stacking, and the value thereof.

2nd. In giving appellee's first instruction, and rejecting appellant's second and fourth instructions.

3rd. In refusing appellant's qualification to appellee's third and fourth instructions.

4th. In refusing appellant's fifth instruction.

5th. In overruling appellant's motion for a new trial.

6th. The court erred in every decision he made against appellant.

For said reasons the appellant prays the Supreme Court to set aside and reverse the said judgment rendered against the appellant, and restore to him his legal rights which he lost as aforesaid.

Peters & Farwell, for Appellant.

O. C. Gray, for Appellee.

Caton, C. J. This work was done under a contract void by the statute of frauds. And the question is whether Swanzey could insist upon the violation of the terms of such a contract, as a defense to the action. Upon this there can be no reason to doubt, when the character of such a contract is considered. It will be found that executory contracts are only avoided by the statute of frauds; executed contracts never. A parole contract which that statute requires to be in writing is as good as any when performed, or while being performed, or when partly performed, so far as the performance goes. Suppose this man had worked the whole year, no one will deny that he would be entitled to the wages fixed by the contract, and no more. The same measure of compensation must satisfy him for the time he did work. Suppose he had agreed to work five years for Swanzey for nothing, but just for the love of it, while he would not be bound to work a day under such a contract, yet if he worked six months or a year under it he would have to be content with the pleasure of the exercise for his compensation. Here was a contract that he should work one year for so much money. Till that service was performed he was entitled to no pay. Whatever he did under that contract must be controlled by its terms. He worked a portion of the time and quit, without a cause. By the terms of the contract under which he did the work he is entitled to no pay. While he agreed to work for nothing he cannot change his mind and go for a *quantum meruit.* He was not bound to work under the contract a single day longer than he pleased. Swanzey could not sue him for a violation of his contract, which was obnoxious to the statute of frauds. While executory, either party might repudiate it. When executed or so far as executed, it was as valid and binding as if it had been in writing. Thus far we have assumed that Moore quit the service without just cause. This is a question which has hereafter to be settled by a jury under proper instructions. On the former trial the contract proved was that Moore should work for Swanzey for one year if they could agree, and that he quit after working a portion of the year be-

cause Swanzey's son, who acted as his agent, had expressed dissatisfaction because Moore and another man had hauled but two loads of hay in a day. In view of this state of facts the appellant asked the court to instruct the jury that the appellee could not manufacture a pretense to disagree with the appellant or his agent, but that he must have had good reason to disagree or become dissatisfied with appellant or his agents, in order to entitle appellee to quit appellant's service before the expiration of his time. This the court refused to give, probably for the reason that it had been already held that the special contract proved was void by the statute of frauds, and that the appellee could recover for the work already done as if there had been no contract, from which position it necessarily resulted that the appellee had a right to quit without cause and when he pleased. We hold differently, and hence the question involved in the instruction became material, for if he quit the service in violation of his contract, he was not entitled to recover for the services already performed. Of the correctness of the instruction we have no doubt. The contract must receive a reasonable and practical construction. Neither party at the time they made the contract contemplated an arbitrary disagreement. A disagreement for reasonable and just cause was undoubtedly intended by the parties, and Moore had no right to seek a frivolous pretense for a disagreement. Such a course was a fraud on the agreement. The instruction should have been given. The judgment must be reversed and the cause remanded.

*Judgment reversed.*