Elvin Hartley and Leta Hartley Hiestand v. Ray
Hartley et al.
Elvin Hartley and Leta Hartley Hiestand, Appellees,
v. E. L. Scott et al., Appellants.

Gen. No. 9,171.

Opinion filed February 8, 1937.
Rehearing denied May 7, 1937.

MADDEN & LADEN, of Rockford, for appellants.

MILLER & THOMAS, KARL C. WILLIAMS and HYER &
GILL, all of Rockford, for appellees.

MR. JUSTICE WOLFE delivered the opinion of the
court.

Horatio Hartley died on the 27th day of August,
1912, leaving a last will and testament, which was duly
admitted to probate in Winnebago county, on the 14th
day of September, 1912. At the time of his death, he
was the owner of the property involved in this suit.
He left surviving him Alice Hartley, his widow and
Leta Hartley Hiestand, Elvin Hartley and Ray Hartley,
his children, as heirs at law. The testator, in his life-

time, had discussed with his wife and children the contents of his will, and informed them that he was leaving the farm and home to his wife, Alice Hartley, for and during her natural life, and at her death the property was to go to his three children.

At the time the will was to be probated, the Hartley family met at the office of attorney Fred A. Smith, in Rockford, Illinois. Mr. Smith informed them that according to his interpretation of the language used, the testator had given Mrs. Alice Hartley the fee in the property, and the children took nothing under that clause of the will. Alice Hartley and each of her three children stated that this was not the intention of Horatio Hartley. Alice Hartley there declared that she wanted the property to go as her husband had stated to her, viz., that she would take a life estate in the property and the fee should vest in the three children. Between the Hartleys, it was then considered and agreed that the three children owned the fee in this land and the widow merely had a life estate.

Later, the following agreement was entered into between the Hartleys: "ARTICLES OF AGREEMENT, Made this first day of April, A. D. 1917. Between Alice Hartley, widow, Leta Hartley Hiestand, widow and Ray Hartley, bachelor, parties of the first part and Elvin Hartley, party of the second part:

"Witnesseth, That if the party of the second part shall first make the payments, and perform the covenants hereinafter mentioned on his part to be made and performed, the said parties of the first part hereby covenant and agree to convey and assure to the said party of the second part, in fee simple, clear of all incumbrance whatever, by a good and sufficient Warranty Deed, the lots, pieces or parcels of ground, situated in the County of Winnebago and State of Illinois known and described as:" (Here follows a description of the property in question which is a farm of

approximately 222 acres.) "and the said party of the second part hereby covenants and agrees to pay to the said parties of the first part the sum of Twenty-two Thousand and Two hundred ($22,200.00) Dollars, in the manner following: $5,000.00 cash in hand receipt of which hereby acknowledged, $100.00 or more in even hundredths on April 1, 1918, and $100.00 or more in even hundredths on the 1st day of each and every April thereafter until April 1, 1937, then balance of the purchase price shall be paid in full, with interest at the rate of five per centum per annum, payable annually on the whole sum remaining from time to time unpaid, and to pay all taxes, assessments, or impositions that may be legally levied or imposed upon said land, subsequent to the year 1916. And in case of failure of said party of the second part to make either of the payments, or any part thereof, or perform any covenants on his part hereby made and entered into, this contract shall, at the option of the parties of the first part, be forfeited and determined, and the party of the second part shall forfeit all payments made by him on this contract, and such payments shall be retained by the said parties of the first part in full satisfaction and in liquidation of all damages by them sustained, and they shall have the right to re-enter and take possession of the premises aforesaid.

"It is further mutually agreed by and between the parties hereto that said second party will keep the buildings and improvements on said premises properly insured in the name of the parties to this contract; that he will keep all of the buildings, improvements and fences on said premises in good repair at all times; that he will properly farm and cultivate said premises at all times and will keep the land and buildings from depreciation and waste and will not allow any mechanic's lien or any claim of any kind to come against said premises,

"It is further expressly understood and agreed by and between the parties hereto that in case of the death of said Alice Hartley, prior to April 1, 1937, then said party of the second part will within one year from the date of the death of said Alice Hartley, pay to said Leta Hartley Hiestand and said Ray Hartley all the balance due them under this contract, it being understood and agreed by and between the parties hereto that all of the payments under this contract, both the principal and interest shall be paid to said Alice Hartley; that said Alice Hartley is to have all the interest accruing on this contract from time to time during her lifetime, and is to invest all of the principal paid in on this contract in a proper manner so that the principal shall be preserved; that said Alice Hartley has the life use of all of the proceeds derived from the sale of the above described premises, but that all the principal at the death of said Alice Hartley is to be equally divided between said Leta Hartley Hiestand, said Ray Hartley and said Elvin Hartley, their heirs, executors, administrators and assigns, and share alike; that whenever the full amount of the purchase price of said premises is fully paid, said first parties shall execute and deliver to said second party good and sufficient Warranty Deed of the above described premises subject, however, to the interest and rights of said second party, and pay two-thirds of the costs of a merchantable abstract showing merchantable title.'' This contract was signed by all the parties and was under seal.

Alice Hartley died intestate on the 15th of May, 1932, and left surviving her, as next of kin and heirs at law, Elvin Hartley, Leta Hartley Hiestand and Ray Hartley, all of legal age. Leta Hartley Hiestand was appointed administratrix by the probate court in Winnebago county to settle the estate. As such administratrix, she filed an inventory of the property, but did

not inventory the farm, nor the house and lot involved in this suit. The appellants each filed a claim against the estate of Alice Hartley, deceased, and on a hearing before the court, each of the claims were allowed as just and true claims. These claimants joined in a petition to the probate court to compel Leta Hartley Hiestand to inventory as assets of the estate of Alice Hartley, deceased, the 222-acre farm, and the house and lot at 840 Haskell avenue in Rockford, Illinois, which properties are the subject matter of this suit. The petition alleged that Alice Hartley, in her lifetime, was the owner in fee of the properties, which should be used for the payments of the claims of the appellants.

In October, 1932, Elvin Hartley and Leta Hartley Hiestand filed a bill in the circuit court of Winnebago county, asking that the court construe the last will and testament of Horatio Hartley. The bill set forth the contents of the Horatio Hartley will. The appellants were granted leave to intervene in said suit and to become parties defendant thereto. After numerous pleadings, the original complaint was amended setting forth the facts as heretofore stated, and the complainants alleged that under said contract of April 1917, Elvin Hartley had become the owner of the premises, and they asked to have all of the appellants' claims removed, as clouds upon the title of said real estate of said Elvin Hartley.

All of the appellants filed answers to the amended bill. A. B. Culhane, receiver for the Forest City National Bank, filed a cross-bill to foreclose a mortgage that was given said bank by Ray Hartley, Alice Hartley and Myrtle Hartley for the sum of $1,450 on Ray Hartley's alleged interest in said farm. The parties filed an answer to this cross-bill. The court heard the case without a jury and rendered a decree in favor of the complainants, Elvin Hartley and Leta Hartley

Hiestand, and in favor of the cross complainant, A. B. Culhane, the receiver. It is from this decree that the appellants have prosecuted this appeal.

At the time of the death of Alice Hartley, Elvin Hartley had paid her the sum of $9,546 on said contract of purchase, leaving a balance of $12,654 as principal. Elvin Hartley paid the $12,654 and interest to Ray Hartley and Leta Hartley Hiestand. In September, 1932, Ray Hartley and Myrtle Hartley, his wife, and Leta Hartley Hiestand, conveyed to Elvin Hartley and Eva, his wife, the farm in question. The amended bill of complaint sets forth the facts, as herein stated, and charges the same were true. The answers of the various defendants denied these facts.

The evidence of the appellees clearly sustains the material allegations of their bill of complaint. The defense has made very little, if any, efforts to disprove these facts. Some of the evidence was objected to, but was permitted to stand in the record by the court. The appellants did not assign any error on the court's ruling on the admission of evidence, and therefore, they are not in a position at this time, to object to it and have not done so in their printed argument. Therefore, we will assume that all the evidence was properly before the court and he so considered it.

From the record, as it now stands, there can be no doubt that the Hartley family met at the office of attorney Smith shortly after Horatio Hartley's death and discussed what construction they would give to the will, and agreed that Alice Hartley had a life estate only in the property, and the fee was in the three children. Elvin Hartley was living on the farm and farming it. This condition was uninterrupted until April 1, 1917, when the contract of sale was entered into between Alice Hartley, her daughter, Leta, and son, Ray, to sell the farm to Elvin Hartley and the contract heretofore referred to had been executed by

the parties. It is under this agreement that Elvin Hartley paid his mother the sum of $9,546. The contract of sale is in the usual form, excepting the statement of how the proceeds of the sale shall be disposed of.

The appellants insist that neither the oral agreement entered into between the parties in 1912, nor the written agreement of 1917, have any binding force and effect as to their claims, since they were judgment creditors of Alice Hartley, deceased, and had no knowledge of any secret agreement, or any other kind of agreement, between the parties, and had had no notice that Elvin Hartley claimed to own the farm in question. On the other hand, the appellees contend that Elvin Hartley was in the open and exclusive possession of the farm and that the agreement of 1912, and the written contract of 1917, were open and above board and were not done with any intent to defraud any of the creditors of Alice Hartley; that she had no creditors in 1917, and that the appellants now are not judgment creditors, as contemplated by the recording act to have priority over Elvin Hartley's unrecorded deed.

The record discloses that the indebtedness on which the claims of Grace Scott and the E. L. Scott were based was not incurred until sometime during the year 1921; that the North Burritt Church's claim was in 1927; the claim of Harry Burkee was in 1932, and the claim of Lula Johns was in 1928. From the dates of these claims, it will be observed, so far as the record discloses, that Alice Hartley was not indebted to anyone until the year 1922, as the Grace Scott and E. L. Scott claims were on promissory notes that were not due until one year after date. This conclusively shows that there was no actual fraud contempted by the parties at the time when either the oral agreement of 1912, or the contract of sale of 1917, was entered into.

There are numerous errors assigned and argued by the appellants, as to why this judgment should be reversed, but it seems to us that the construction which the court gives to the latter paragraph of the contract of sale entered into between the parties in 1917, is conclusive to the rights of the parties in this suit. If the language therein used created a trust in favor of Elvin Hartley and he had the equitable title to the premises, and if the money which he paid to his mother, during her lifetime, as part of the purchase price under the contract of sale, was held by her in trust, as provided in the agreement, then there can be no question but that the trial court properly decreed that the land now belongs to Elvin Hartley.

It seems to us that there can be no doubt that the language used in this contract did create a trust. The latter part of the contract clearly provides that Elvin Hartley was to pay a stipulated price for this farm and that all the money which was paid to Alice Hartley, during her lifetime, should be held in trust for a definite purpose, and if she lived until April 1st, 1937, then Elvin Hartley should pay the full amount of the purchase price and procure a deed. If she should die before April 1, 1937, then the other children, according to the contract, upon Elvin Hartley paying the full purchase price, shall make a deed to the premises to him, and divide equally among themselves, the amount of the purchase price of the farm. Pursuant to this agreement, Elvin Hartley paid the full purchase price and Ray Hartley and his wife and Leta Hartley Hiestand, conveyed their interest in and to said farm to Elvin Hartley and divided the money, as provided in the written contract.

It is seriously insisted by the appellants that the oral agreement of the Hartleys' dividing the land of Horatio Hartley (not as the will provided, but as they contend he had meant it to be) is an attempt to create

a trust by an oral agreement and that it was void and contrary to the statute of frauds and could not be ratified by a subsequent agreement of 1917.

Not every parol trust is void. In the case of *People v. Tombaugh*, 303 Ill. 591, at p. 593, our Supreme Court in discussing trusts, uses this language: "Appellant contends the agreement of Mrs. Allen to hold the property in trust for the children and leave it to them by will at her death was an unenforcible agreement to make a will; that it was an express trust, and being in parol was within the Statute of Frauds and void. An express trust resting in parol is not absolutely void even though it may not be enforcible, if the Statute of Frauds is relied on as a defense, where performance of the trust is sought to be enforced. Trusts very similar to the one here involved have been enforced as constructive trusts. (*Stahl v. Stahl*, 214 Ill. 131; *Ward v. Conklin*, 232 id. 553; *Hilt v. Simpson*, 230 id. 170.) A parol agreement which the Statute of Frauds requires to be in writing, is, when performed, as good and valid as if it had been in writing. (*Swanzey v. Moore*, 22 Ill. 63; *Jones v. Jones*, 281 id. 595.) Mrs. Allen always recognized and admitted she held the beneficial interest in the property for the children and by her will performed the trust. The Statute of Frauds cannot be invoked to avoid a contract which has been carried into execution. (*Cleveland, Cincinnati, Chicago and St. Louis Railway Co. v. Wood*, 189 Ill. 352; *Pearce v. Pearce*, 184 id. 289.) It is also well settled that the Statute of Frauds can not be interposed by strangers to the agreement. *Pasquay v. Pasquay*, 235 Ill. 48, and cases there cited."

In the present case, the Hartleys agreed among themselves how this property should be divided. The children took possession of the farm under this agreement and Alice Hartley, the mother, claimed only the life interest in the farm. She recognized that the fee

was vested in her three children. It seems to us that the oral agreement of 1912, has very little, if anything, to do with the merits of the case, since there was a valid written agreement entered into by the parties in 1917. The 1912 agreement does show the intention of the parties in regard to how they disposed of the property. It is a serious question whether the defendants, who did not become judgment creditors of the estate of Alice Hartley, until 1932 (20 years after the oral agreement was entered into) are in a position to raise the question of the statute of frauds in this particular case.

Point 5 of the appellants' argument is, "Assuming for the purpose of the argument that the agreement of April 1, 1917, did create a trust, said agreement was never recorded and the possession of said farm by Elvin Hartley was notice only of his rights therein and not of the rights in said farm of Ray Hartley and Leta Hartley Hiestand, so that their interest in said farm and the amount due them as beneficiaries of said claimed trust was subject to the claims of the creditors of the said Alice Hartley." The appellants, by this argument, assume that they are judgment creditors, and as such they had rights of an innocent purchaser for value. In the case of *Noe v. Moutray,* 170 Ill. 169, the court, after a careful analysis of the different cases which had considered this question, by it and other courts, concluded as follows: "For the reasons stated, we are of the opinion, that a creditor, whose claim against an estate has been allowed in the probate court, is not such a judgment creditor, having a lien within the meaning of the recording acts, as entitles him to priority over an unrecorded deed, executed by the deceased in his lifetime, and remaining unrecorded at the time of the allowance of such claim."

As before stated, the contract of sale entered into between the Hartleys on April 1, 1917, is in the usual

form with the exception of how the proceeds of the sale are to be divided. After this contract was entered into between the parties, Alice Hartley, Ray Hartley and Leta Hartley Hiestand had no authority or control over this land except to convey it to Elvin Hartley on his completion of the payments, as provided in the contract. They could not sell or incumber the land so as to prejudice the rights of Elvin Hartley. The case of *Doolittle v. Cook,* 75 Ill. 354, is in many respects similar to the one that we are now considering. In the *Doolittle* case Henry Chase on January 14, 1864, was the owner of certain lands. On that date he sold it to Richard Cook for $3,000. $100 was paid in cash, and notes given for annual payments running for ten years. Chase gave to Cook a bond for a conveyance with his complying with the terms of purchase. Cook had occupied the premises for several years prior to purchasing it as a renter, and after he purchased it, he continued to occupy it by residing with his family on the same. He made his payments and in 1870, received a deed of conveyance on March 9th of that year. Chase's contract for deed was not recorded. He gave a mortgage back for a part of the unpaid purchase price.

On August 5, 1868, Chase gave Doolittle a note for $4,000, and executed a mortgage to secure this note on the premises he had sold to Cook. In 1869, Chase gave another mortgage on the same premises and other property. Doolittle filed a bill to foreclose his mortgage. The court found that the mortgage on the premises, not including the land covered by Cook's contract of sale, was a valid and existing mortgage and so decreed, but found in the decree that the mortgage was void as to Cook's land and was a cloud on his title, and ordered it to be canceled as far as it related thereto. The court in their opinion use this language, ''The important question presented in this record is as to what interest the plaintiff in error acquired in the land pur-

chased by Cook, or in the purchase money he was to pay for the same. Being in actual occupancy of the premises, according to the numerous and uniform decisions of this court, he was as fully protected in his purchase as if his bond had been recorded before and not after the mortgage. He occupied the same relation to the land and to the parties as if the plantiff in error had been actually notified of the entire facts of the transaction." The court affirmed the decision of the trial court and held that Chase had no interest in the land and that the mortgage he gave did not affect the rights of Cook, the purchaser.

This case has been followed by later decisions of our Supreme Court in the following cases: *Winemiller v. Mossberger,* 355 Ill. 145; *Bullard v. Turner,* 357 Ill. 283. In the case of *Thorne v. Oberg,* 286 Ill. App. 352, the vendor had entered into a contract of sale of certain premises and later had given a mortgage on the same premises. We there held that when a vendee under an executory land contract has made the agreed payments and is entitled to a deed, or has paid the contract down to a balance such that, under its terms, he is entitled to pay the balance of the purchase price by execution and delivery of a mortgage to the vendor, the vendee is entitled to a deed clear of any lien, right or title of any subsequent purchaser, or any incumbrancer of the vendor.

It is our conclusion that the contract of sale in question was a valid and binding contract; that as between Elvin Hartley and the appellants, they had no valid claim against said land and the court properly found that Alice Hartley had no interest in said farm and the same should not be inventoried as assets in her estate.

The appellants insist that although this court may find that Alice Hartley was not the owner of the land in question, still, the articles of agreement of April 1, 1917, did not create a trust in favor of the children of

Alice Hartley in the proceeds of the sale of the farm and therefore, this money should be used to pay the indebtedness of the estate of Alice Hartley.

An examination of this part of the contract clearly shows that Alice Hartley had no interest whatsoever in the principle of the payments under this contract, but was to have the use of it only during her lifetime, and at her death it was to be distributed equally between her three children.

It is our conclusion that the instrument in question created a trust in favor of Alice Hartley's children, and at her death, the proceeds of the sale, the $22,000, should be divided equally among them and that Alice Hartley had no interest whatever in the corpus of this fund, but had only the use thereof, during her lifetime.

The court, by its decree, found that the mortgage given by Ray Hartley et al., to the Forest City National Bank was a lien on an undivided one-third of the said farm. The appellees, in their brief and argument, have not questioned the validity of this mortgage. We do not pass upon the validity of this mortgage, because the same has not been questioned in this court.

No reversible error has been called to our attention in this case, and the decree of the circuit court of Winnebago county is hereby affirmed.

*Decree affirmed.*